## Appeal of John Anderson, acting administrator of Christopher Griffith (the 2d,) from the decree of the Orphan's Court of Lancaster county; on the settlement of his administration account.

Heir at law may be estopped by his acts in a court of record from asserting his
right, and thereby convert real into personal estate.

THE following facts appeared from the records of the Orphan's
Court, on which the question of law arose.

Christopher Griffith (the 1st) died sometime previous to 1761
intestate, seised of 200 acres of land in Salisbury township in
Lancaster county ; leaving a widow, named Isabella, (afterwards
married to George Leach) and six children, the eldest named
John and the second son Christopher, whose estate was under
consideration.  On the 2d June 1761, John obtained a valuation
of his father's real estate at 780l. which was confirmed to him,
on paying or securing to be paid the shares of the other chil-
dren within one year, by the Orphan's Court.  He gave no se-
curity in the Orphan's Court, but paid off the distribution shares
of all his brothers and sisters, except of Christopher (the 2d)
who was *non compos mentis*, and discharged the yearly interest

of one third of *the valuation of the real estate to his mother. It was agreed by the friends and relations of the family on the 20th January 1776, that the said John should be credited for such sums as were expended by him on account of his brother Christopher out of the valuation, and settled with him accordingly.

After the death of John Griffith intestate, his eldest son Christopher (the 3d) obtained another valuation of the same real estate at 1697l. 15s., and on the 6th September 1786, the premises were confirmed to him, on paying or securing to be paid the distributive shares of the other children of the said John, within fifteen months.    The record of the Orphan's Court then proceeds thus :—" And it being represented to the court " by Christopher Griffith (the 3d,) and John Anderson and " George Leach, guardians of the minor children of the said " John Griffith, that a principal of 260l. remains charged on the " said lands, under an order of Orphan's Court of 2d June 1761, " in order to enable the said John to pay off the sum of 15l. 12s. " yearly during the natural life of Isabella Leach, widow of " Christopher Griffith, grandfather of the said Christopher (the " 3d ;) and that the principal of the distributive share payable " to Christopher Griffith, (the 2d) of insane memory being 75l. " 4s. 8½d., together with divers sums of interest, is also due from " the estate of the said John, and that other sums likewise " amounting to 914l. 7s. and upwards, are also due from the said " estate, and that there remain only 13l. 12s. 6d. of the personal " estate to pay the same : the court directs, that the said Chris- " topher (the 3d) do pay out of the valuation money, the afore- " said sums, and any other monies which may be justly due from " the estate of the said John Griffith, that he be credited with " the interest of any money payable therefor, within the said " fifteen months, and that the residue only of the said valuation " be paid by the said Christopher (the 3d,) after the payment of " the just debts of his father, and the expenses of the valuation " and confirmation, to and amongst the widow and children of " the said John Griffith."

Christopher Griffith (the 2d) continued in a state of mental derangement, until the time of his death on the 26th June 1793. John Anderson and another administered on his property.

On the 26th June 1793, he settled his administration account in the register's office and in the Orphan's Court.    He was charged therein as follows :

|  | £ | s. | d. |
|---|---|---|---|
| With the distributive share of the decedent of the valuation of his father's lands, . . . . | 75 | 4 | 8½ |
| With interest thereon from 20th January 1776, to 26th June 1793, . . . . . . . | 66 | 1 | 11½ |
| With a bond due from the administrator of John Griffith, deceased, . . . . . . | 67 | 7 | 1 |
| Amount carried forward, . . . . | 208 | 13 | 9 |

[Griffith's Appeal from Adm'rs.]

Amount brought forward,   .   .   .   . 208  13   9
*With interest thereon from 20th January 1776,
    to 26th June 1793,   .   .   .   .   . 64  19  8¾
With the distributive share of the decedent of the
    personal estate of his father,   .   .   .   .· 13  9  1¼

                                              £287  2   7
And credit was allowed for divers payments made
    by him, amounting to   .   .   .   .   . 23   7   7

Balance in the hands of the accountant,   .   £263  15  00

From the sentence in the Orphan's Court Anderson appealed, and the only question was, whether as between the children of Christopher Griffith (the 1st,) his grandson Christopher (the 3d,) and the accountant, the distributive share of Christopher (the 2d) was to be considered as personal estate under the circumstances of the case, or, whether the one undivided seventh part of the land did not vest in Christopher (the 3d,) as heir at law of his uncle Christopher (the 2d) ?

Mr. M'Kean for the appellant, relied on Walton v. Willis, 1 Dall. 351. The premises never became wholly vested in John Griffith, as he neither paid nor secured the payment of the valuation money of the share of his brother Christopher (the 2d,) and therefore this seventh part descended to his heir at law.

Mr. Hopkins, for the other branches of the family, contended that under existing circumstances, Christopher (the 3d) was estopped from claiming as heir at law. It is well known, that no recognizances were given in Lancaster county, for the children's shares of a valuation, until some ·years after the revolution. Christopher (the 2d) was non compos, and no legal payment could be made to him. John therefore could only bring the share into the Orphan's Court and lodge it with the clerk, where it would have remained wholly unproductive. It was much more beneficial to the family, and also to the unfortunate man, to let the share. continue as a charge on the land, into whose hands soever it should come, and apply the interest from time to time, according to the necessities of the lunatic. Such was the state of the law previous to the revolution, that no legal mode could be then adopted, to appoint a committee over the estates of insane persons : But here Christopher (the 3d) has concluded himself, by his solemn act in a court of record. On the 2d September 1786, all the family considered the right of Christopher (the 2d) to his share of the land itself devested ; and his nephew, stepfather, and the accountant affirm, in the Orphan's Court, that. 75l. 4s. 8½d., with interest, is due therefor from *the estate of John Griffith, deceased : and for these sums Christopher (the 3d) obtains credit out of the amount of the valuation. The consequence must be, that he shall only take an equal share

[Wilson's Lessee *v.* Rhoades.]

of the valuation with his brothers and sisters, so far as respects his uncle's interest therein ; and complete justice is done thereby to all the family.

By THE COURT. It seems to us, that the grandson is concluded from claiming this undivided seventh part of the lands, as heir at law of the lunatic. Estoppels are of three kinds ; by matter of record, in writing, or *in pais*, and the acceptance of rent is of the last sort. One of the reasons why estoppels are allowed is, that what a man has once alleged, is to be presumed true, and therefore he ought not to contradict it.* What passed between the parties in the Orphan's Court, operates most strongly against Christopher (the 3d,) and he ought to be concluded thereby. Let the decree of the Orphan's Court be affirmed with interest.

Referred to in 9 S. & S. 429 ; 11 S. & R. 428.